21-1038, Nurelis v. Aquestive Therapeutics, Inc. The Board's obvious misfindings are based on a legally flawed conclusion regarding priority. Specifically, the Board's decision should be reversed because the Board erred in two ways. First, the Board improperly interpreted dependent claims 26-28 and 30-33, which recite dodecylmaltoside. The Board interpreted those claims as requiring nothing more than the alkylglycoside limitation of independent claim 1. This error led the Board to disregard these dependent claims and fail to address the undisputed support for dodecylmaltoside in the provisional application. Second, with respect to the alkylglycoside limitation of the remaining claims, the Board failed to apply the correct legal standard in that it first required a disclosure of a preference for the claimed embodiment as opposed to evidence of possession of the claimed embodiment. Then, it misapplied the law regarding incorporation by reference, resulting in a failure to treat the entirety of the six pages of the SGMA Catalog, which are indisputably incorporated into the provisional application, as incorporated. Now, I'd like to begin with the first error, which specifically relates to six of the dependent claims. The Board erroneously interpreted the scope of those six claims. Independent claim 1, from which those six claims depend... Before you go into the merits, would you just address the waiver argument? Because I understand your opponent to suggest that you didn't make this argument below. It was made only in a single footnote in passing and not a developed argument. So, can you show us where you made this argument below in a way that alerted the Board to the fact that you were separately arguing dependent claims and not just hinging your argument on a representative claim, as lawyers often do in these cases? Certainly, Your Honor. If we turn to Appendix 487, and we did make this argument in a footnote. Page 487? Appendix 487. In this footnote, we reference the testimony of petitioner's expert, Dr. Peppas, in his cross-examination, his deposition, about his declaration that supported the petition. We state, and I quote, Dr. Peppas agreed that the SGMA catalog, that's the document that was incorporated by reference into the provisional application, includes alkyl glycosides specifically identifying dodecylmaltazide. Then we further note that dodecylmaltazide is what is claimed in these For context, Your Honor, at this point in the proceeding, it was undisputed that dodecylmaltazide was disclosed in the SGMA catalog and recognized by a person of skill in the art. Patent owner's expert, Dr. Gesersen, said that it was his opinion that that was the case. Dr. Peppas, petitioner's expert, said that he agreed that that was what is disclosed in the SGMA catalog. Now, notably, petitioner, in their petition, did not even address the dodecylmaltazide in the record. They did not acknowledge its content, and they only made a conclusory statement that somehow alkyl glycosides and specifically dodecylmaltazide were not disclosed, described, or enabled. In the institution decision, the board cited a rule of prosecution to state that the incorporation of the SGMA catalog was somehow improper because you cannot incorporate essential material. That justification that the board provided for the petitioner was abandoned in the final written decision. So what's the point of that? The board made a mistake in the institution decision when it said it wasn't incorporated, and then they overcame that mistake in their final decision by treating it as incorporated. We all make mistakes. They were smart enough to recognize it and overcome it. How does that help you? What's the point? When we filed this patent owner response, the context of that was what was laid out. The issue that was identified by the petitioner was a lack of disclosure of alkyl glycosides and specifically dodecylmaltazide that did not acknowledge, analyze, or discuss a document that, at this point in the proceeding, is indisputably incorporated by reference into the provisional disclosure. So when we were filing this response, there was no discussion that that disclosure, that literal disclosure of dodecylmaltazide, was somehow insufficient to provide written description for a claim that claims dodecylmaltazide. The problem for me, and I struggle with this, it's a consisting of claim. It's not a comprising claim. So you have a disclosure that's incorporated by reference that discloses, I don't know, 150 different things? How many does it disclose? 200? I don't know how many. There are a number of compounds. I believe it's over 100, but they are categorized. In the SGMA, in that SGMA document, I think it's over 150, isn't it? I think that's about right. Okay. So it discloses 150 different possible, are these compounds? Compounds, yes. Okay. I'm sorry. I'm doing my best here. So 150 different compounds. Then you have this consisting of claim, which means this and only this. How does a disclosure of 150 random compounds satisfy the need to show possession of this and only this? So to begin with, that disclosure of all of those compounds are categorized, and that disclosure must be read from the perspective of a person of skill in the art. When the incorporation by reference appears in the provisional catalog, what it says is you can have these certain agents. Some of them are surface-acting agents, which are surfactants, and preferably non-ionic versions of those. Then it goes on to say also these biological detergents that are disclosed in the six pages of the SGMA catalog. Now biological detergents are surface-acting agents. They're surfactants. That's not disputed in the record. Petitioner's expert said so at deposition. So what it's pointing you to is the SGMA catalog and saying, look at the biological detergents here, and in particular, look at the non-ionic ones. If you turn to the first page of the SGMA catalog... One way or the other, isn't it the specification itself that's got to show possession, not extraneous documents? The SGMA catalog is incorporated by reference, and at this point it is undisputed. The board accepted that it is incorporated by reference into the provisional application. What that means is it has to be taken in its entirety with all that it discloses and placed inside the specification. It's not an extraneous document. It is part of the specification. We can look at the pages of the SGMA catalog and say, this is the specification of the provisional disclosure. If I may direct your honors to the appendix where that SGMA catalog appears, appendix 10705. This page in particular exemplifies our point. Here you have selected detergents, biological detergents. The specification has told you these biological detergents are part of the inventor's invention. They pointed you specifically to the non-ionic ones. Within these selected detergents, if you look towards the bottom, the non-ionic compounds listed, there's 10 of them. Seven of them are alkyl glycosides. Petitioner's own expert readily recognized them as alkyl glycosides at his deposition, without hesitation. To be absolutely clear, when were the claims to the species that we seem to be concerned with, the dodecylmaltoside, when were those claims added? I gather they were not in the provisional. Is that right? That's correct. They were in the utility application that followed the provisional, which claims priority to the provisional. There is little support for the dodecylmaltoside limitation. There can be no doubt about that. If you are actually accepting the incorporation by reference, which is not in dispute. Moving to the alkyl glycoside... When you say there's literal support, the problem is, even if I were to agree, which the board did not, the board did not agree that, as a factual matter, you had pointed people to using, in particular, non-ionic detergents. As a factual matter, I'd have to say there's no substantial evidence for that board fact-finding to get there. But there are, I think, in excess of 60 non-ionic detergents listed, only a handful of which are alkyl glycosides, and only one of which is dodecylmaltoside. So, you have an incorporated by reference disclosure with 150 compounds in it, 60 under the header non-ionic detergent. How did the inventor show possession of this and only this, because of the consisting of language? To the exclusion of the other 59 non-ionic detergents that are listed. The consisting of language does not change the legal standard, which requires only that the inventor show that they possessed what was claimed in the priority document. It does not mean that the priority document must be restricted to and only describe that one embodiment. The inventor was in possession of all of the embodiments. The only question to be asked is... No, the inventor was not in possession of... How can you say the inventor was in possession of all of the embodiments? There are all kinds of compounds in here that wouldn't satisfy these claims, or even the goal of these claims. So, you're telling me the inventor is in possession of all 150 possible compounds listed in the SGMA reference, even though many of them would absolutely not function as a method for treating a patient with this disorder? Yes, and my response to that is that the specification, the priority disclosure, and the claims do not need to be co-extensive. The inventor is entitled to claim one of the embodiments that is disclosed in the specification, and to disclose other embodiments that may be claimed later, or may not be. The question to be asked on whether there is written description support in the provisional application is not whether there is pointing to this and only this embodiment in the provisional application. The question to be asked is, a person of skill in the art reading this disclosure, do they readily recognize that the inventor was in possession of what they are claiming at the time that the provisional was filed? And the answer here is yes. Does it show that the inventor was in possession of other embodiments of the invention? Yes, but it does not require that it be limited only to a disclosure of the particular claimed embodiment. When you say, does it show the inventor was in possession of other embodiments, I see no evidence in this patent or otherwise that other than the alkyl glycosides, the other 143 different compounds listed in the SGMA reference would have worked at all. So what we have is an inventor who threw out 150 compounds in a provisional. These provisional applications get filed before inventors have really honed in on what their precise invention is. And so he or she threw out a provisional which incorporated by reference all of these compounds but then later determined only a small handful of them actually worked or were worth claiming or what. I don't know. And that's why, how are we supposed to figure out the inventor possessed as of the date of the provisional the fact that these particular ones would have worked? So I agree with Your Honor that if the inventor is going to claim something, there has to be both written description and enablement. The person of skill in the art has to be able to practice the invention. But the question at issue here for priority is not the enablement, it is the written description. And did the inventor convey that this was part of their invention at the time of the filing of the provisional? And the inventor did point to dodecylmaltazide. There is literal support in the written description for that claim limitation. That is just a matter of fact that cannot be disputed. You said there's literal support in the written description. You mean because dodecylmaltazide is one of 150 different compounds articulated in the SGMA reference? So because dodecylmaltazide appears in the specification, yes, as part of that incorporation. It appears in the specification by virtue of the incorporation. Correct. Not separately. Correct. So did the inventor just out of curiosity possess claim one, but without an alkyl glycoside, suppose instead we added lithium salt, which is one of the anionic detergents listed in the SGMA reference. Did the inventor possess this method of treating a patient with this disorder? So a method of treating a patient assumes as part of the construction that it would actually treat the patient, right? Is that fair? Correct. Yeah. So did this inventor possess this method precisely? Instead of except for the words and an alkyl glycoside, we stick in lithium salt. Did he possess that compound, that particular method? That would have to be assessed from the perspective of a person of skill in the art. And if that was the claim at issue— But you're telling me the fact that he incorporated by reference something with 150 compounds means he possessed all 150. So it's not a laundry list of 150 compounds to begin with. It is a categorized disclosure of different compounds, and the specification does specifically call out that non-ionic is what is important. The board disagreed with you on that as a factual matter. The board did not agree that the SGMA reference was limited to the 60 compounds listed as non-ionic detergents. Yes, but the board did not disagree that the biological detergents that are disclosed in these six pages are incorporated into the specification. So that's 150. So 150 things are incorporated into the specification, most of which probably don't work to treat somebody with this condition. So, Your Honor, that's a question of enablement on a claim that's not at issue. You're asking me to conclude that a fact-finding the board made about what the inventor possessed at a very early time, the provisional application, whether to overturn a fact-finding about what an inventor possessed, and you're doing it based simply on a large-scale disclosure of 150 compounds. So the board did not make a finding based on possession. They made a finding based on preference, which was their legal error. That is not the standard. The specification does not need to show a preference for the dodecylmaltazide. It need only show possession. So that is where the board got it wrong. They applied the incorrect legal standard to the facts, and what the facts show, the only testimony of record are from patent owner's expert and petitioner's initial expert, that they readily recognize alkylglycosides as a subgenus and dodecylmaltazide specifically in the specification of the provisional document. What's your strongest evidence for possession of the alkylglycosides in the provisional? It's the Sigma catalog, and for dodecylmaltazide in particular, it's part of the specification. That compound appears in the specification as part of the written description. That is what the inventor said. This is what I've invented. This is my invention when they filed their provisional application. Okay. Well, you've used all of your time and all of your rebuttal time, so why don't we hear from Mr. Scola, please? Thank you, Your Honor. Good morning. May it please the Court. The Board's decision was based on substantial evidence, based on the testimony of inquestors' experts, that there was no written description for alkylglycosides or dodecylmaltazide. Just as a matter of housekeeping, you agree that the Board's original conclusion in the petition that this wasn't incorporated by reference was modified in the final decision, and the Sigma disclosure, these six pages, are considered incorporated by reference into the material? Yes, Your Honor. Okay. Certainly. Just as a housekeeping matter, I just wanted to do that. Yes. Go ahead. The Board also found substantial evidence for the motivation to combine the references, and when those references were combined by POSA, there was a preponderance of evidence that led to the uncatenability of all the claims. I would like to address a couple of points before I get into written description. The first is Norellis' argument that with respect, that there was not proper notice given with respect to the Sigma catalog and written description. Under dynamic drinkware, Equesta fulfilled its burden of production when it asserted invalidating prior art against the 876 claims. It was not required to recite the Sigma catalog. Once that invalidating prior art was cited, the burden of production shifted to Norellis. That's all that's required under dynamic drinkware. However, in the petition, we did go a step further, and we did give notice that there was no written description with respect to alkylglycosides and dodecylmaltoside. We did that in the appendix at 225. The point about the waiver of the dependent claims. During oral argument, Judge Turnquist asked the following, and I quote, Counsel, this is Judge Turnquist. 803 in the appendix, that's when the question was asked. And then the next page is 829, that's when it was answered. Judge Turnquist. Counsel, this is Judge Turnquist. I have maybe a follow up question. Where in the patent owner response do you address the claim, the claims as a whole for written description support? Counsel's answer was, regarding your Honor's questions regarding whether we laid out in our papers the provisional support for each and every limitation of the claims, it's not explicitly here.  Now, I would like to say that also that the board expressed... I'm sorry, where were you reading from? I see Counsel, this is Judge Turnquist. I have a follow up question. Where in the patent owner response do you address the claims, the claims as a whole for written description? Yes, and then there's on the next page, 829 of the appendix. 829? 829, yes. I think it's towards the middle of the page, Your Honor. It starts, regarding your Honor's questions, regarding whether we laid out our papers. Well, Counsel, I mean, they asked a question, and then there's 26 pages of testimony that you didn't give me, and then an ambiguous answer regarding your Honor's questions regarding whether we laid out in our papers the provisional support for each and every limitation of the claims. It's not explicitly there. Each and every limitation, I don't know what limitations they're talking about. Respectfully, I don't see how that helps you at all. Yes, Your Honor. When they first asked the question, opposing counsel said that she would answer this on rebuttal, and so that's why there's all this intermediate discussion that went on, and then they asked for written description support of all the claims, and that was the answer. That doesn't mean that she's admitting that there's no written description support for dodecile mounds aside. Well, if there's no, respectfully, Your Honor, they say it's explicitly not there. I mean, written description. Who says it's explicitly not there? If her answer is, with respect to written description of each and every limitation of the claims, it's not explicitly there. For each and every limitation. She's not saying no claim limitations are supported. She says maybe there's some that aren't supported. When she says each and every limitation, it's not explicitly there, I'm sorry, but with all due respect, I don't have any clue what limitations she's talking about at that point. Yes, Your Honor. I mean, perhaps the 26 intervening pages would have lent some clarity between the question and the answer you want me to assume is an answer to a particular question, but... I understand, Your Honor. Those pages do not provide any additional information, however. I do want to state also, however, that the Board did expressly address dodeltamaltasol. They did this in the appendix, page 19 at the beginning, when they said that after they've incorporated, by reference, the 12-alpha-glycoside species, there was no written description for the 12-alpha-glycoside species, which, of course, includes the species dodeltamaltaside. Now, I will also mention that the term alpha-glycosides appears nowhere in the SGMA catalog or in the 558 provisional. That was a term cobbled together. The Board did not specifically address anywhere the dodeltamaltaside, did they? I think it does, because when they address the 12-alpha-glycosides, it has to include dodeltamaltaside. They also addressed it later on, when it dealt specifically with the dodeltamaltaside-dependent claims. Where is that? What page can I find that? One moment, Your Honor. Pages 33 to 35 of the appendix. And where do you say they address whether or not there's support for the dodeltamaltaside? This looks like it's just articulating the arguments. Am I missing something? Yes, in the appendix on page 19, at the top of that page, they expressly talk about dodeltamaltaside. They talk about that they incorporated the 12-alpha-glycoside species. Once that was incorporated, there was no written description for the 12-alpha-glycoside species. Okay, but it's saying there's nothing that leads someone to alkylglycosides in the stigma catalog. But is that different from whether there's something that leads somebody specifically to dodeltamaltaside? Your Honor, that was just a truncated way of listing the 12-alpha-glycoside species. I'm not sure that the Board recognized all 12. They know there's 12 there because our experts recited 12. But dodeltamaltaside certainly is one of the 12 species. And if they're saying that there's no written description for the 12-alpha-glycoside species, that certainly means that there's no written description for each of them, including dodeltamaltaside. So why, I'm confused, if this patent had listed 150 compounds right in the specification, wasn't even incorporated by reference, 150 compounds, why doesn't that satisfy the possession requirement? I don't think it's a question of numbers, Your Honor. It's a question of whether there's direction enough to show that they had possession. I think it's instructive to look at the totality of the 558 provisional. What Norellis is arguing, basically, is that they're focusing on one page of the Sigma catalog, which is six pages, and to the exclusion of those six pages, and all the rest of the enhancer paragraphs in 558. And if you would like to turn to page eight of the red brief, it's quite instructive, because it gives you paragraphs 150 to 152. There, you can see that there's a discussion of the enhancers. And in those paragraphs, there's 15 classes that are provided of enhancers. And in fact, in paragraph 151, you can see that there are preferences. Two classes are preferred, the lysophospholipids and the acylcarnitines, with some preferred species of each. Then as you go down to paragraph 152, you see additional classes that are listed. One of them is surface active agents, and in parentheses, it says especially non-ionics. And then additional listings. Just out of curiosity, since it says surface active agents, especially non-ionic materials, why wouldn't that, as opposing counsel suggested, take you to page 10705 of the Sigma reference, which is incorporated by reference, which has a category non-ionic, and it lists 10 things, seven of which are alkyl glycosides. So why wouldn't that show possession to a skilled artisan? We have two comments to make with respect to that question, Your Honor. The first is that we have agreeing testimony from experts on both sides that says that the term non-ionics as it relates to surface active agents is not in any way linked or connected to the class of biological detergents, and in fact, even a layman looking at it would see that they are distinct classes. However, the Questiv's expert took this a step further and said, well, what if a POSA was prompted by non-ionics? Then you go to the Sigma catalog, which was incorporated, all six pages by reference, and when you see the six pages, and that's helpful to look at the six pages, not just focus on one, that can be found at 10705 of the appendix to 10710. When you look at the entirety of that, you see that there are four subclasses, anionics, cationics, zwitterionics, and non-ionics. And the Questiv's expert said, even if a POSA were prompted by non-ionics, there's 150 biological detergents that you have to sift through, and then when you get to the non-ionic class, there's 100 non-ionics there, among which there are sprinkled 12 alkyl glycosides species. Again, the term alkyl glycosides was in the claims, but it's nowhere to be found in any of the Sigma catalog or the 5.5A provisional. That was cobbled together in order to make a class of alkyl glycosides. But there's testimony from Dr. Vermelin that says that nothing points to, nothing provides direction, and it's not immediately discernible that you would know that alkyl glycosides or dodecylmaltoside is part of the invention by going to this catalog, this pricing catalog. So is part of the invention not every one of these 150? What we know is that there are some preferred ones, and we can certainly say those are part of the invention. But what we also know is that there's substantial evidence that points to lack of written description with respect to alkyl glycosides and the species dodecylmaltoside. Even though dodecylmaltoside is expressly listed as one of the 150? Yes, Your Honor. The mere recitation is insufficient unless there's something that shows that the inventor had possession at the time. There's got to be some direction to that species, not just a recitation, and that's what the board said. The board relied on the incorporation of those 12 species and then said, notwithstanding the recitation, there was substantial evidence that a person of ordinary skill in the art would not know that alkyl glycosides or dodecylmaltoside was part of the invention. Because a lot of times in cases like this you have literally hundreds upon hundreds of hundreds of possibilities and it turns out only a couple of them worked and there wasn't evidence showing the inventor possessed those particular ones. In the Juno case it was literally billions. So here we're talking about a list of 150, and I have no idea how many work, but they're claiming 12. And if you were to look at page 1 of the reference, 7 of 10 under the header non-ionic are included. How do we know, what is the evidence that the board, this is a fact question, so what specifically is the substantial evidence that supports the board's finding that this disclosure wouldn't have led a skilled artisan to appreciate that this inventor possessed alkyl glycosides in particular? Yes, the board relied on the testimony of a Questives expert, which said that a posa even being directed to this class of non-ionics in the Sigma catalog still would not know which non-ionic to select because there's simply no direction as to which of these species would work, which is important. Did the inventor include all of these 150 biological detergents? I mean, after all, this is a pharmaceutical which is intended to go into the body. We don't know which ones work. And there's just simply no direction, no blaze marks that points to dodecymaltosol among 150 biological detergents. And then the substantial evidence was the testimony of Dr. Wormley, who was a Questives expert, and upon which the board properly relied. Counsel, it seems to me that your friend on the other side is arguing that the manner in which the reference is categorized and the categorization of the different non-ionic detergents that are listed here is a sufficient blaze mark. What's your response to that? Well, we know from the testimony of a Questives expert that even given that as a blaze mark, he even posed that as a blaze mark. If that were to prompt someone who is a poser to go to the Sigma catalog and look under non-ionics, still no direction as to which one points to dodecymaltoside. And there is no alkyl glycoside class to point to. There's no sub-sub class. Okay, Counsel, I think your time is up. Ms. Devine will give you two minutes of rebuttal time. Thank you, Your Honor. I appreciate it. I will be brief. A couple of notes. The enablement argument, whether it would work, and the consisting of argument were not raised below. Those are new arguments raised by Petitioner in their briefing here. And we would submit that under Bivings v. U.S. Department of Agriculture, that's 205 F. 3rd, 1331 Federal Circuit, 2002. This court cannot affirm based on an argument that was not raised below. The second point I'd like to make is that my friend on the other side continues to espouse a preference argument. And it is not a preference for dodecymaltoside that must be shown in order to show possession. And there is no evidence of record that says that a person of skill in the art opening the specification and seeing the words dodecymaltoside would not readily understand that the inventor was in possession of dodecymaltoside as stated there. So just to be clear, you're arguing that this species would be separately patentable whether or not the references prior art listing the 150? Let me clarify, Your Honor. So we're arguing that the species is patentable because the specification discloses the species. The reference GWATS that was the basis for all of the obviousness findings, if we are entitled to that priority date, is not prior art. So the obviousness findings cannot stand so long as we are entitled to that priority date, which we are entitled to at least with respect to the dodecymaltoside claims which are literally supported in the provisional application. Does that answer your question, Your Honor? Well, I really was hoping to draw a more precise line when I said whether or not they're entitled to the filing date, the provisional date. So the support is in the provisional, so we would need to be entitled to the provisional date, which we are, and I see that my time is up. Okay, thank you both. Counsel, this case is taken under submission.